JOSEPH F. GLATT, Plaintiff, *v.* GEORGE D. MEADE et al., Defendants.

County Court, Oneida County, August 23, 1924.

Liens — mechanic's lien — action to foreclose lien — laborer, one of several lienors, entitled to preference for part of claim involving labor, though he also presents claim for materials furnished — plaintiff not entitled to personal judgment against defendant where he fails to establish personal liability — plaintiff entitled to moderate allowance of costs pursuant to Lien Law, § 53.

In an action to foreclose a mechanic's lien, a laborer, one of several lienors, may divide his claim for labor and materials furnished and be accorded a preference

for the amount separately claimed for labor where his notice of lien, pleadings and proof indicate a distinct claim upon which he should be given priority notwithstanding an agreement with his general contractor subsequent to the contract of employment by which he assumed to furnish building materials.

Plaintiff is not entitled to a personal judgment against the defendant owner where he operated entirely under another defendant and failed to establish anything in the nature of a personal claim against the owner.

A moderate allowance of costs fixed at seventy-five dollars will be awarded the plaintiff pursuant to section 53 of the Lien Law since he has brought the action and will be obliged to prepare judgment and dispose of the case.

ACTION to foreclose a mechanic's lien.

*Nicholas G. Powers,* for the plaintiff.

*Charles J. Fuess,* for the defendants Meade et al.

*Clarence E. Williams (W. Rabenstein,* of counsel), for the defendant Campion Company.

*Lee, Dowling & Brennan,* for the defendant Owens.

*Dunmore, Ferris & Dewey,* for the defendants Roberts and Hanley.

HAZARD, J. This is a mechanic's lien foreclosure. Sometime in the summer of 1923 defendant Meade, the owner of the premises in question, made a building contract with defendant Lecky, who agreed to furnish the necessary labor and material to construct and complete a bungalow on Brighton place in the city of Utica. The contract, Exhibit 6, called for a total cost of $6,100. On October eighth of that year, Lecky, the contractor, gave to Meade, the owner, a receipt (Exhibit 8) for $1,000. Meade admits that no money changed hands on that occasion but testified that the contract price was " padded " by that amount. It is contended on behalf of some of the defendants that credit should not be given for the $1,000 credit represented by Exhibit 8. At the same time they insist that the contract price should remain as stated in the contract. There is no basis for allowing this claim, the case being utterly barren of any evidence of collusion between the builder and the owner, that is, except as one might infer that the " padding " of the purchase price was more or less collusive. No claim is made on the part of any of the subcontractors that they were deceived by the " padded " price, or even that they were aware what the contract price was. Defendant Meade testifies that the contract was entered into with the understanding between himself and Lecky that it should be for $1,000 in excess of the actual price, and he says that Lecky gave him the receipt of September eighth in pursuance of that agreement. This testimony is not controverted to any extent whatever and, as it does not appear that any one

is prejudiced by the arrangement, it seems to me I am bound to take the owner's word for it that the real and actual contract price was $5,100, in the utter absence of any contradictory evidence.

The contention is made by some defendants that, this being an action brought by a subcontractor, a claim for breach of contract arising after the filing of the lien cannot be set up against the plaintiff's claim so as to reduce the amount due at the time of the filing of the lien, citing *Anisansel* v. *Coggershall*, 83 App. Div. 491. I do not think that that case applies to the situation at bar, for the reason that there was nothing due at the time of filing of the plaintiff's lien or the other liens, to the general contractor. At the time the liens were filed, Lecky, the general contractor, had abandoned his job and not a cent was due him; in fact, it is very likely possible that he had been overpaid or at least that payments had been made by the owner to workmen employed by him in advance of when they were due on the Lecky contract. Plaintiff's lien was filed December twenty-ninth and the lien of the latest defendant was filed January 10, 1924. At about the same time the owner served notice upon the general contractor, requiring him to proceed within three days with his contract. Lecky never did proceed with the contract and, eventually, the owner employed another contractor to complete it. This was within his rights under the contract. The owner and the witness Alt testified in detail as to what was unfinished and the cost of completing the job. It may be noted here that there is no controversy in the evidence with reference to these claims, in fact there is not a controverted question of fact in the case. There was somewhat extensive cross-examination of the witness Meade, but no evidence whatever was produced to contradict anything which he said.

We start out with the real contract price of $5,100, to which is to be added three items of extra work totaling $145, bringing up the total amount which the owner, defendant Meade, is to be charged, to $5,245.

We come to the matter of payments, and it seems to be established in this case that prior to the filing of any liens, and eliminating the $1,000 item represented by Exhibit 8, the defendant Meade had made to or on account of the contractor Lecky the following payments: August twenty-seventh, $500; September first, $200; September twelfth, $500; September twentieth, $200; October twenty-ninth, $250; October thirtieth, $1,000; November seventh, $250; November eighth, $600; December first, $500; December fourth, $250; December twenty-second, $100. These total $4,350, leaving a balance of $895.

It may be observed that the item of $25, paid to Attorney

Reichler, has been eliminated from the foregoing. I am compelled
to decide that neither upon the pleadings nor the proof can this
item be allowed. I am also compelled to disallow the item of
$23.56 claimed by defendant Meade as a credit for relocating or
rebuilding the cold air box in connection with the furnace. There
was some claim made by Meade that the box as built " did not
work," but no evidence going to establish that Lecky or any one
operating under him was at fault in that respect. The witness
Roberts testified: " Mr. Meade wanted the box changed and I
changed it." In the entire absence of any evidence establishing
any fault in the box on the part of Lecky or that he did not build
it how and where he was directed, I have disallowed that item.
Following the filing of the liens, the owner paid for painting and
varnishing, etc., on the inside of the house $100, and for painting
the outside $110, for completing the carpenter work, to the witness
Alt, $182.86. I do not see why all of these items should not be
allowed. They total $392.86 and reduce the amount due from the
owner to $502.14. To this, I think, should be added interest on
that amount from February first to the time of the entry of
judgment, which may be computed by the clerk.

The plaintiff was a subcontractor and filed the first lien, it being
for $552.70. Next in order of filing came the lien of the defendant
Roberts for $734. Next, the lien of the defendant Hanley for
$211.75. Following that, the lien of defendant Owens for $536.60,
and lastly the lien of defendant Campion for $420.54. These
liens, of course, would be paid in the order of their priority, except
that a question is raised on behalf of defendant Owens. He filed
his lien for labor $266, and material $270.60. Upon the trial he
proved that he personally did all the mason work upon the building,
totaling thirty-eight days, under an agreement that he was to
have $7 per day. It is claimed, therefore, that he is entitled, as to
that part of his lien which is for labor, to a preference. *Bracker
v. Weldgen,* 118 Misc. Rep. 177, is cited as authority on the
proposition that he is not entitled to this preference. I do not
think the case is in point. All that is held there is that one who
does trucking, furnishing an automobile truck and possibly driving
it himself, is not a " laborer " within the meaning of the Lien Law.
*Vrooman Sons Co. v. Pierce,* 179 App. Div. 436, is cited in support
of this claim, but I do not think it is really in point. The question
is whether this defendant's claim *may be split* and he given the
preference on that part of it which deals with labor. *Matter of
Ripsom & Newland Fur Co.,* 32 Misc. Rep. 56, is cited as an
authority against this contention. That case grew out of a general
assignment and I do not think it at all in point. There can be no

doubt but that, so far as the labor claim of defendant Owens is concerned, if it stood alone, he would be entitled to a preference. He with his own hands laid the cellar wall, built the chimney, plastered the house, built some piers and laid the cement floor in the cellar. So far as appears, he did all this work himself, assisted at times by a mason's helper furnished by the general contractor. Were it not for the fact that he also furnished some materials, there could be no question about his having a priority over all the other lienors, notwithstanding that several of them filed their liens prior to his. The question is as to whether the fact that he also furnished some materials, destroys the priority of that part of his lien which deals with his own manual labor. No authority has been cited to me bearing at all directly upon this point, and in the limited time at my disposal I have been unable to find any. The contention is made that, because he testified on cross-examination, " It was all one contract," the component parts of his claim are indivisible. If it may be a fact that a laborer who contracts to do manual labor upon a building job and also to furnish material thereby becomes a " subcontractor " and loses his priority either as a " laborer " or as a " material man," with reference to which I do not express any opinion, I believe that that situation is to be differentiated from the present one, because it appears clearly enough that the original contract between Lecky and Owens was that Owens was to do the mason work himself, personally, at $7 per day; that later on and after the work had started, Owens consented that certain building materials might be sent upon the job and charged to him. I think I must hold that he did not lose his right of priority as a laborer by the arrangement subsequently made. This is an equitable action and it has been repeatedly held that the Lien Law, as a remedial statute, should be liberally construed. I, therefore, reach the conclusion that Owens is entitled to a preference which is established both by his notice of lien and by the proofs on that part of his claim amounting to $266, which represents his days' work upon the job in question.

We come to the question of costs which are regulated by section 53 of the Lien Law. The situation is not without serious difficulties. The owner and various lienors have appeared here by attorney and established their rights in the premises. I do not desire to dissipate the entire small fund, nor any very serious part of it, in allowances of costs; but I feel that the plaintiff, who has brought this action and will be obliged to prepare judgment and clean up the case, should be entitled to a moderate allowance, which I will fix at $75, besides his necessary disbursements. The judgment

may provide that, after the payment of costs, defendant Owens shall first be paid the amount of his lien for labor, amounting to. $266. The balance will apply upon the plaintiff's lien, which will consume the fund.

Plaintiff has demanded in his complaint a personal judgment against defendant Meade, but as he operated entirely under the defendant Lecky, he has entirely failed to establish a personal liability as against Meade. No other defendant seems to have demanded a personal judgment in favor of himself and against the contractor Lecky, nor to have established anything in the nature of a personal claim against Meade, the owner.

A judgment of foreclosure may be prepared in the usual form, containing the provisions hereinbefore indicated.

Judgment accordingly.